UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF NEW YORK

------------------------------------------X

CHRISTINE MANCISION,

               Plaintiff,            09 Civ. 8295

   -against-                       OPINION

HYATT HOTEL CORPORATION & THE
HYATT HOTEL IN MORRISTOWN,
NEW JERSEY and JAMES GRAEBER,

               Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        WATTERS & SVETKEY, LLP
        286 Madison Avenue, Suite 1800
        New York, NY 10014
        By: Kyle B. Watters, Esq.

        Attorneys for Defendant
        Hyatt Hotel Corporation/Hyatt Hotel in Morristown, NJ

        JONES HIRSCH CONNORS & BULL P.C.
        One Battery Park Plaza
        New York, NY 10004
        By: James P. Connors, Esq.
            Gail K. McCallion, Esq.

        Attorneys for Defendant
        James Graeber

        MINTZER, SAROWITZ, ZERIS, LADVA & MEYERS, LLP
        39 Broadway, Ste. 950
        New York, NY 10006
        By: Michael Stern, Esq.
            Mayya S. Gotlib, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-26-11

**Sweet, D.J.**

Defendant Hyatt Hotels Corporation s/h/a Hyatt Hotel Corporation & Hyatt Hotel in Morristown, New Jersey ("Hyatt") has moved pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing the complaint of plaintiff Christine Mancision ("Mancision" or the "Plaintiff"). Defendant James Graeber ("Graeber") has cross-moved under Rule 56 for the same relief. Upon the facts and conclusions set forth below, Hyatt's motion is granted and Mancision's complaint against Hyatt is dismissed; Defendant Graeber's motion is denied.

**Prior Proceedings**

Mancision filed her diversity complaint (the "Complaint") on September 30, 2009, alleging that, on November 22, 2008, she attended a wedding reception at Hyatt's hotel in Morristown, New Jersey. Compl. ¶ 11. The Complaint alleges that, while Mancision was dancing on the dance floor, another guest, later revealed to be Defendant Graeber, grabbed her arm without consent, spun Mancision and tossed her to the floor. Compl. ¶¶ 12, 13. Plaintiff states that she subsequently learned that Graeber had arrived earlier at the reception

1

visibly intoxicated, Compl. ¶ 15, and that Hyatt staff served Graeber drinks notwithstanding his visibly intoxicated state. Compl. ¶ 16.   The Complaint alleges that Mancision was hospitalized for two days with a broken wrist, Compl. ¶¶ 18, 19, and is entitled to $1 million damages for Hyatt's violation of the New Jersey Dram Shop Act, NJSA § 2A:22A-5, and Graeber's negligence.   Compl. ¶¶ 21-26.

Issue was joined, discovery has proceeded and the instant motions were marked fully submitted on June 22, 2011.

**The Facts**

The facts, as set forth in Hyatt's Local Rule 56.1 Statement, Graeber's Rule 56.1 Statement, Mancision's Local Rule 56.1 Statements in response to Hyatt's and Graeber's statements and Graeber's response to Mancision's statement, are not in dispute except as noted below.[1]

---

[1]     Martha Graham, the American modern dancer and choreographer who was awarded the Presidential Medal of Freedom in 1976 and was named "Dancer of the Century" by Time magazine in 1998, once explained: "Dancing is just discovery, discovery, discovery." Perhaps in recognition of Ms. Graham's wisdom, the parties have also submitted photographs of the wedding and Plaintiff's footwear, the Banquet Captain Report from the evening of November 22, Plaintiff's medical reports, x-ray images and deposition testimony from Plaintiff Mancision, Defendant

On November 22, 2008, Mancision and her boyfriend
Brett Henige ("Henige") attended the wedding of Mary Graeber and
Chris Beley ("Beley") and the following reception at Hyatt's
hotel in Morristown, New Jersey.  Also present were Defendant
Graeber and non-party witnesses, Maura Scanlon and Evan Holn
("Holn").  The ceremony at a church was followed by a cocktail
hour and then dinner at the Hyatt.  After the church ceremony,
Mancision and a few other guests went to the lobby lounge at the
hotel and had two glasses of wine while waiting for the cocktail
hour to begin.  During the cocktail hour, Mancision drank some
champagne.  After the cocktail hour, Mancision and other guests
were seated for dinner during which time Mancision was given a
vodka-tonic cocktail.  Following dinner, Mancision and Henige,
along with a few of his co-workers, proceeded to the dance floor
where they danced in a group for about 15-20 minutes.  Mancision
was wearing shoes which had a 3-3-1/4 inch heel, although at
least one witness described the shoes as tall 4-1/2 inch
stiletto shoes which were so "stunning" that they were a topic
of conversation among the guests.

Graeber, Hyatt's director of banquets Emir Kobak, Maura Scanlon,
Brett Henige, Mary Graeber, Chris Beley, and Evan Holn.
Information from these sources is also included in this factual
summary.

3

As Mancision and some fellow guests were dancing, Graeber and his cousin Holn went on to the dance floor. There is a dispute as to how crowded the dance floor was at the time of the incident. The parties were engaged in dancing in the style of "free form rock-n-roll." Graeber testified that, after he had been on the dance floor for about two songs, he and Holn were approached by a group of five to six women, including Mancision, who indicated by gestures and non-verbal conduct that they wanted to dance with Graeber and Holn. Mancision has contested this testimony stating that Graeber, "all of a sudden . . . [h]e takes me by my arm spins me around, as if to dance with me, and flings me off to the side and I went flying across the dance floor." According to Graeber, Mancision held her hand out to dance with him and the two danced for a few moves, with Graeber pulling Mancision in and out and then when Graeber tried to swing Mancision out, she fell to the floor.

Graeber states that he asked Mancision if she was all right, but realized Mancision was injured on account of her crying. Graeber states that Holn advised him to move away from the dance floor because he had probably scared Mancision and because she was hurt. Mancision testified that Graeber did not approach her. Maura Scanlon, one of Henige's co-workers, saw

4

Mancision fall, and she and Henige helped Mancision up off the floor and out of the room.  Later, an ambulance took Mancision to Morristown Memorial Hospital.  At the hospital, Mancision received x-rays, and physicians recommended surgery.  A metal plate and three screws were inserted to repair Mancision's wrist.  Plaintiff has stated that the severity of these injuries provides evidence upon which to infer that Defendant Graeber engaged in reckless conduct in his encounter with Plaintiff.

Mancision acknowledges that she has no firsthand knowledge in support of the allegation that Graeber was intoxicated at the time of the accident or that Hyatt served alcohol to Graeber while in a visibly intoxicated state.  According to Mancision, Graeber's conduct on the dance floor evidenced his intoxication.  No witnesses who have testified saw Graeber visibly intoxicated on November 22, 2008.  Mancision states that the witnesses' testimony is not dispositive of the issue, as Graeber's intoxicated state could be inferred.  In support of her claim, Mancision highlights Graeber's testimony acknowledging that he "probably had a beer," that he stated "I like beer," that Beley had seen Graeber intoxicated at prior similar functions, that the wedding party stopped at a bar and ordered drinks prior to the reception and that Hyatt's Banquet

Captain Report noted that several of the guests had consumed too
much alcohol.

No witnesses testified that they saw Hyatt employees
serve alcohol to Graeber while he was visibly intoxicated.
Hyatt's Banquet Captain Report states that "[a] few guests had
too much to drink and one was cut off from the bar.  That guest
was given water and coffee and was eventually escorted to her
room by a friend.  The bartenders were told not to serve any
more shots even though many of the guests were requesting them."
At her deposition, Mancision described how Henige told her that
he had heard from Beley that Graeber was late to the wedding
ceremony because he had been drinking and missed being able to
walk his mother down the aisle.  Graeber disputes any allegation
that he was late or that one of his duties at the wedding was to
walk his mother down the aisle.

Mancision has asserted that she is 5'3" tall and
weighed about 115 pounds at the time of the incident.  Graeber
is 6'2" and weighs 260 pounds.  He has worked as a stage hand
for eleven years, has ADD and ADHD, and takes three five
milligram doses of Adderal daily as treatment.  Graeber noted
that at the time of the incident, he was on probation for a

prior criminal conviction and would not have done any recreational drugs such as marijuana at that time because he was being drug tested as a condition of his probation.

**Summary Judgment Standard**

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060-61 (2d Cir. 1995).  Summary judgment is appropriate where

7

the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case.  When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).  In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of events is not wholly fanciful."  Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

**The Complaint Against Hyatt Is Dismissed**

8

The Complaint has asserted one cause of action against Hyatt sounding in negligence based on the allegation that Hyatt violated New Jersey's Dram Shop Act, N.J.S.A. 2A:22A-1 et seq. New Jersey's Dram Shop Act is "the exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage server." Mazzacano v. Estate of Kinnerman, 197 N.J. 307, 319, 962 A.2d 1103 (2009) (quoting N.J.S.A. 2A:22A-4).

New Jersey's Dram Shop Act states as follows:

a.   A person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages from a licensed alcoholic beverage server only if:

(1)   The server is deemed negligent pursuant to subsection b. of this section; and

(2)   The injury or damage was proximately caused by the negligent service of alcoholic beverages; and

(3)   The injury or damage was a foreseeable consequence of the negligent service of alcoholic beverages.

b.   A licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor.

N.J.S.A., § 2A:22A-5.

9

As such, to establish liability under New Jersey's Dram Shop Act, Mancision must establish that Hyatt served alcohol to Graeber while he was in a visibly intoxicated state.  Pursuant to N.J.S.A. 2A:22A-3, "Visibly intoxicated" is defined as "a state of intoxication accompanied by a perceptible act or series of acts which present clear signs of intoxication."  N.J.S.A. 2A:22A-3; see also Mazzacano, 197 N.J. at 321; Bauer v. Nesbitt, 198 N.J. 601, 614, 969 A.2d 1122 (2009) (dismissing plaintiff's Dram Shop Act claim  because, inter alia, no guest observed patron consuming alcohol and no witness testified that the patron was visibly intoxicated).

Mancision has not submitted direct evidence that Graeber was intoxicated on November 22, 2008, or that Hyatt employees served him alcohol while he was in a visibly intoxicated state.  The parties deposed seven witnesses—including Mancision and Henige—who had the opportunity to observe Graeber's behavior at the wedding ceremony and the reception.  None of these witnesses testified that Graeber appeared intoxicated at any point that day.  Although Graeber's recollection of the wedding is not fresh, Graber

10

testified that he believed the only alcohol he consumed that day was one beer that he obtained during the cocktail hour. Graeber Dep. at 23. The photographs of Graeber at the wedding and reception confirm that he was present at the wedding ceremony; he was present for photographs taken of the wedding party and of the family; and he manifested no signs of intoxication. In none of the photographs can Graeber been seen consuming alcohol.

Mancision testified that she did not notice Graeber for any reason during the evening, Mancision Dep. at 18, and that she had no first-hand knowledge that Graeber was intoxicated or that Hyatt served alcohol to Graeber in a visibly intoxicated state. Mancision Dep. at 52-53. The only evidence to support her claim were hearsay statements related to her by Henige, who told Mancision that Beley had told him Graeber was late to the wedding and did not walk his mother down the aisle on account of his being intoxicated. Henige himself offered no probative evidence. Mary Beley née Graeber, the bride, and Beley, the groom, have stated that Graeber was not late to the wedding, that he was present for the photographs taken before and after the ceremony, that at no time during the

11

proceedings was his speech slurred or was the smell of
alcohol detected on his breath and that he was neither
rowdy nor noisy, nor were his eyes red.  C. Beley Dep. at
20-21, 25; M. Beley Dep. at 20, 46-47.  Mary Beley never
complained to anyone, including her husband, that her
brother was late to the wedding, that he was intoxicated or
that she was upset with his condition.  M. Beley Dep. at
39-40.  Holn testified that Graeber was not intoxicated at
the wedding.  Holn Dep. at 30, 34.  Henige testified that
he recalled seeing Graeber once at the bar during the
evening and that he did not observe him being loud or rowdy
and that the only information he had of intoxication was
based on the statement conveyed to him by Beley.  Henige
Dep. at 43.


        Emir Kobak, the Director of Banquets at the
Hyatt, testified that Hyatt bartenders are trained to alert
the Banquet Captain if a guest is having too many drinks,
Kobak Dep. at 16, and that all bartenders attend alcohol
awareness training every six months.  Id. at 17.  The Hyatt
Banquet Captain's Report reflects that Hyatt's policy as to
excessive drinking was enforced at the wedding reception,
that a female guest was cut off from the bar (and given

water and coffee and was escorted to her room) and that the
servers were directed not to serve shots notwithstanding
some guests were requesting them.

As described above, Mancision testified that,
other than hearing Henige repeat what Beley told him in the
Cube Lounge about Graeber being late to the wedding,
Mancision had no other indication that Graber was
intoxicated at the time of the accident.  Mancision Dep. at
52-53.  Other than these statements, the only other
information Mancision has presented regarding Graeber's
alcohol consumption is that Henige recalled seeing Graeber
once at the bar at the reception earlier in the evening.
The statements Henige reported to Mancision are hearsay.
Fed. R. Evid. 801(c); Rosensaft v. Aston Tech. Grp., Inc.,
No. 97 CIV 3138(SAS), 1997 WL 749384, at *2 (S.D.N.Y. Dec.
4, 1997).  Although hearsay is admissible when accompanied
by certain guarantees of trustworthiness, see Fed. R. Evid.
803, Mancision's testimony is not supported by any such
guarantees, and the declarant of the hearsay statements,
Beley, denied under oath that he ever made such statements.
Inadmissible hearsay cannot raise an issue of fact
sufficient to defeat a motion for summary judgment.

Rosensaft, 1997 WL 749384, at *3 ("[T]he only issue is whether inadmissible hearsay can raise a triable issue of fact sufficient to defeat a motion for summary judgment. The short answer is it cannot.").

In opposing a motion for summary judgment, the non-moving party must present concrete evidence from which a reasonable juror could return a verdict in its favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). The party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586-87. Here, Mancision has failed to come forward with specific facts, instead stating that "there is at least enough circumstantial evidence upon which to conclude that James Graeber, who was served alcohol by defendant Hyatt's employees, was visibly intoxicated at that time." Pl.'s Mem. at 20. This circumstantial evidence, however, is insufficient.

14

Based on Beley's testimony, Mancision has proffered as evidence of Graeber's alleged intoxication, the possibility that he may have joined members of the wedding party at George & Martha's Bar between the wedding and the reception. Id. at 19. However, Beley testified that he was not able to recall whether Graeber was with him at the bar and that his only specific recollection was that he was accompanied by four friends from out of town (which did not include Graeber). C. Beley Dep. at 63-64. Graeber testified that, following the wedding, he drove his truck to the reception. Graeber Dep. at 17. The possibility that Graeber might have gone to George & Martha's Bar does not constitute circumstantial evidence sufficient to defeat a motion for summary judgment. McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 85 (2d Cir. 2005) ("The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment.").

Mancision also posits the possibility that Graeber may have consumed more than one or two beers at the

15

reception.  However, no witness observed Graeber to be
intoxicated, and Henige testified that he recalled seeing
Graeber only once at the bar during the reception.  Graeber
testified that he "probably had a beer", and that at the
time he went onto the dance floor, the only drink he
believed he had consumed was the one he brought with him
from the cocktail reception.  Mancision has cited the Hyatt
Banquet Captain's Report to establish that Hyatt served
alcohol to visibly intoxicated guests.  However, Graeber
was not among those guests identified in the report as
having too much to drink.  Mancision also provides her
subjective opinion that Graeber's dance moves "are actions
demonstrative of drunken behavior."  Mancision's arguments
constitute speculation that is insufficient to defeat
Defendant's motion for summary judgment.

        In her opposition, Mancision argues that Altman
v. Bayliss, No. 95-CV-0734E, 1999 WL 782338 (W.D.N.Y. Sept.
30, 1999), and Adamy v. Ziriakus, 92 N.Y.2d 396, 681
N.Y.S.2d 463 (1998), demonstrate that summary judgment is
not warranted on the facts and evidence she has presented.
The facts of these cases, however, are not analogous to
those presented in Mancision's lawsuit.  In Altman, it was

16

"undisputed" that defendant had consumed a number of drinks at an inn prior to the accident and, additionally, plaintiff proffered expert testimony based on eyewitness reports, which evidenced defendant's state of intoxication. In Adamy, plaintiff's circumstantial evidence consisted of an expert who established that defendant consumed 12 drinks prior to the accident, and the testimony of several police officers who testified that defendant had alcohol on his breath, glassy, red eyes, slurred speech, that he was unresponsive to police inquiries and that he was swaying and staggering when walking.  In Mancision's case, Plaintiff has not adduced similar circumstantial evidence.

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, where, as here, a party fails to establish existence of an element essential to that party's case.  See Celotex, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").  Mancision has not proffered any evidence, direct or circumstantial, to

17

establish that Hyatt served alcohol to Graeber while in a
visibly intoxicated state to overcome the testimony of
seven witnesses who confirmed that they did not observe
Graeber to be visibly intoxicated and did not observe Hyatt
serve alcohol to Graeber while in a visibly intoxicated
state.  Hyatt's motion for summary judgment is granted.

**The Cross-Motion Of Graeber To Dismiss The Complaint
Against Him Is Denied**

        In determining whether to grant Defendant
Graeber's motion for summary judgment and dismiss
Mancision's negligence claim, the relevant standard of care
must first be determined.  Both Mancision and Graeber note
the absence of any New Jersey authority establishing the
standard of care to be applied to those engaged in what has
been termed free-style or group dancing.  See Graeber Mem.
at 7; Mancision Mem. at 2-5.

        As one who began dancing seeking to emulate Fred
Astaire's ballroom dancing with Ginger Rogers, I have
experienced the change over time from ballroom dancing to
rock and roll, group dancing, the end of "touch dancing,"
and, as a sometimes performer of marriage ceremonies, the

18

rather dramatic change in the form of social dancing.[2]  This experience makes the selection of the appropriate standard of care for the participants even more challenging.

Predictably, Mancision, as Plaintiff, advocates the application of ordinary negligence while Graeber, as Defendant, advocates that that the Plaintiff be required to show that the Defendant's conduct was reckless or intentional.  Graeber seeks the application of the standard of care applied in recreational activities, citing the consideration of public policy and notions of fairness the New Jersey Supreme Court cited in Crawn v. Campo, 136 N.J. 494, 503, 643 A.2d 600 (1994).  The Crawn Court, in applying a recklessness duty of care standard to participants in informal recreational sports, referred to two policy considerations: the promotion of vigorous participation in athletic activities, and the avoidance of a flood of litigation generated by voluntary participation in games and sports.  Id. at 501.  Graeber notes that, just

---

[2]    This is not to say the outlook for traditional "touch dancing" is entirely grim.  Ballroom dancing may be experiencing a resurgence in popularity.  Although the numbers are dated, statistics published in 1995 stated that the number of people aged under-30 engaging in ballroom dancing increased some 110% over a five year period while a 75% increase had been noted among individuals in their 30s and 40s.  See "Ballroom Dancing," Dance Magazine, Apr. 1, 1995.

as New Jersey courts have sought to promote vigorous participation in athletic activities, New Jersey courts have held that weddings and social dances play an important societal role worthy of protection. See e.g., Lax v. Princeton Univ., 343 N.J. Super. 568, 572, 779 A.2d 449 (N.J. Super Ct. App. Div. 2001); Bieker v. Cmty. House of Moorestown, 169 N.J. 167, 177, 777 A.2d 37 (2001).

The recklessness standard of care provided in Crawn has been applied to other informal sports activities. See, e.g., Obert v. Baratta, 321 N.J. Super. 356, 359-60, 729 A.2d 50 (N.J. Super. App. Div. 1999) (applying recklessness standard when softball player sued teammate for injuries sustained as a result of teammate's pursuit of fly ball during informal game). The Crawn holding was expanded in Schick v. Ferolito, 167 N.J. 7, 767 A.2d 962 (2001), a case involving a golfer who was struck by an errant tee-shot. In that case, the court observed:

> The applicability of the heightened standard of
> care for causes of action for personal injuries
> occurring in recreational sports should not
> depend on which sport is involved and whether it
> is commonly perceived as a 'contact' or
> 'noncontact' sport. The recklessness or
> intentional conduct standard of care articulated
> in Crawn was not meant to be applied in a crabbed

20

fashion.  That standard represented the
enunciation of a more modern approach to our
common law in actions for personal injuries that
generally occur during recreational sporting
activities.

Schick, 167 N.J. at 18-19.


        Under New Jersey law, both the scope of tort liability

and the duty owed are questions of law for the court, not the

jury, to decide.  Carvalho v. Toll Bros. & Developers, 143 N.J.

565, 572, 675 A.2d 209 (1996); Kelly v. Gwinnell, 96 N.J. 538,

552, 476 A.2d 1219 (1984) ("Determinations of the scope of duty

in negligence cases has traditionally been a function of the

judiciary.").  The rationale for requiring an injured party

participating in a sporting event to show more than ordinary

negligence is the recognition of "the risk-laden conduct that is

inherent in sports".  See Obert, 321 N.J. Super. at 359, citing

Crawn, 136 N.J. at 508.


        Social dancing at a wedding reception does not qualify

as "risk-laden" activity equivalent to playing sports despite

the evident probability of contact with others.  The absence of

litigation arising from dancing indicates a diminished risk akin

to that of walking on crowded sidewalks.  The Crawn decision

leads to the conclusion that ordinary negligence is the

21

appropriate standard.  Graeber concedes that the activities in the cases he cites, "involve more aggressive sports than the activity of dancing at a social function", Graeber Mem. at 11, and most weddings are considered formal events.  Since participants on the dance floor at weddings range in capacity, competence, age and infirmity, there is no demonstrated heightened risk of physical contact that may result in injury.

It may be instructive that courts in New York have repeatedly held that there are ordinary risks involved in participating in social dancing, whether it is losing one's balance, or twisting one's ankle or having one's knee buckle or being accidentally struck by another dancer on the dance floor. See, e.g., Gough v. Wadhams Mills Grange, 279 A.D. 825, 825, 109 N.Y.S.2d 374 (3rd Dep't 1952); Nelson v. Cafe Wienecke, 18 A.D.2d 392, 393, 239 N.Y.S.2d 693 (1st Dep't 1963).  Whether Graeber's conduct, whatever it turns out to have been, was an ordinary risk or not, remains a factual issue.  Graeber has also alleged that Mancision by her conduct and clothing assumed whatever the risk is that is attendant upon free dancing, again a factual issue weighing against granting summary judgment.  The existence of such conflicts concerning material facts requires the denial of Graeber's motion for summary judgment.

22

It should be noted that Mancision on this motion has made reference to a sentence of probation imposed on Graeber for a domestic incident involving a charge of "terroristic threats" for which he served no jail time and was sentenced to probation. Federal Rule of Evidence 609 precludes Plaintiff from raising such evidence at trial. Rule 609 states that, for purposes of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited on cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year and the court determines the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment. Fed. R. Evid. 609(a). Graeber's conviction for a crime that did not involve "dishonesty" or "false statements" and that did not result in Graeber being imprisoned is entirely irrelevant to the issue at bar and its introduction outweighs any probative value. See United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977) ("Congress emphasized that the second prong [of Rule 609(a)] was meant to refer to convictions peculiarly probative of credibility, such as those for perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense"). Graeber's medical condition may well be

23

inadmissible on account of irrelevancy unless it is established
that Adderal could affect Graeber's conduct on the dance floor.

## Conclusion

Based upon the facts and conclusions set forth above,
the motion of Hyatt for summary judgment is granted, the
complaint against it is dismissed, and the cross-motion of
Graeber is denied.

It is so ordered.

**New York, NY**
**October** 26, **2011**

_____

**ROBERT W. SWEET**
**U.S.D.J.**

24